UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MEGAN HANCOCK,  )<br>TRENTON HANCOK,  )<br>LILLY HANCOCK,  )<br>CADRIAN NOE, and  )<br>RAEDAN NOE, all b/n/f  )<br>APRIL HOLLON and TIA MAYNARD;  )<br>APRIL HOLLON; and TIA MAYNARD,  )<br>    )<br>     Plaintiffs,  )<br>    )   Case No.: _____<br>  v.  )<br>    )<br>GENERAL MOTORS, LLC d/b/a  )<br>GENERAL MOTORS COMPANY d/b/a  )<br>GENERAL MOTORS.  )<br>    )<br>     Defendants.  )| |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**I.     Introduction**

1.     While driving her 2004 Cadillac CTS vehicle in the middle of the afternoon on Saturday, September 5, 2015, along State Road 122 in Preble County, Ohio, Megan lost control and veered off the road. Her vehicle slammed into an embankment, rolled over at least twice, and finally came to a stop, but not before Megan's body was violently ejected from the vehicle. Megan was taken by ambulance to nearby Miami Valley Hospital where she was diagnosed with several serious bodily injuries. Megan's wrist and pelvis were fractured. She suffered from deep lacerations along her right leg with permanent scaring. She suffered traumatic brain injury; she had "significant and debilitating" cognitive deficits and was non-verbal. Megan spent the next several months in an extended care facility as a team of medical professionals including neurosurgeons and physical therapists tried to provide the best care they could. Unfortunately,

Megan's condition has only nominally improved as she continues to need round the clock care given her chronic psychological, behavioral, and cognitive deficits resulting from this crash. The severity of Megan's permanent injuries have forced her children into the care of loved ones as she struggles to remember their names, and at times even who they are.

2. The reason that Megan's children have been and will forever be deprived of their mother goes back to 2004. This was the model year of the vehicle Megan was driving – a 2004 Cadillac CTS. The Defendant – General Motors – installed in Megan's vehicle a faulty ignition switch that could cause "accidental ignition shut off." The result of this defect: "engine power, power steering, and power braking may be affected, increasing the risk of a crash.. . .may result in airbags not deploying, increasing the potential for occupant injury . . ." Megan lost control of her vehicle that Saturday afternoon. Despite slamming into an embankment and rolling over at least two times, her airbags never deployed.

3. General Motors knew of this defect in its product since at least 2006 when its own test drivers reported the problem. Rather than inform owners of the vehicles of the defect, General Motors secretly ordered different ignition switches for its future vehicles, keeping drivers like Megan with the defective ignition switch in the dark about just how dangerous their vehicles really were. Throughout the following decade, General Motors continued to encounter problem after problem with both the old and "new" ignition switches, deciding to only inform the federal government on April 11, 2014. A recall was not issued until July 2, 2014. However, despite obtaining title to her Cadillac CTS on March 4, 2015, General Motors did not notify Megan of the defect until after the September 5, 2015 crash.

4. As a result of the Defendant's negligence in manufacturing Megan's vehicle and failure to warn of the dangerous defect, Megan has suffered permanent and debilitating physical,

mental, and emotional injuries, has incurred hundreds of thousands of dollars in medical expenses, thousands of dollars in lost income, and severe and extreme emotional distress.

## II.     Jurisdiction, Venue, and Cause of Action

5.      This Court has jurisdiction to this action pursuant to 28 U.S.C. § 1332.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

7.      Plaintiffs bring this action to redress Defendant General Motors' negligent manufacturing of Megan's 2004 Cadillac CTS vehicle and negligent failure to warn Megan of the dangerous defect in said vehicle, all of which proximately caused Plaintiff damages significantly exceeding $75,000.00.

## III.    Parties

8.      Plaintiff Megan Hancock is a bona fide resident of the State of Ohio and resides at 5120 Silver Hart Road, Eaton, Ohio 45320 and has been domiciled at this address for at least six (6) months prior to the filing date of this action.

9.      Megan's next friend, April Hollon, is Megan's mother and legal co-guardian who is a bona fide resident of the State of Ohio and resides at 5120 Silver Heart Road, Eaton, Ohio 45320 and has been domiciled at this address for at least six (6) months prior to the filing date of this action.

10.     Megan's next friend, Tia Maynard, is Megan's sister and legal co-guardian who is a bona fide resident of the State of Ohio and resides at 533 Lockgren Drive, Eaton, Ohio 45320 and has been domiciled at this address for at least six (6) months prior to the filing date of this action; Tia Maynard is also the legal guardian of three of Megan's children, Plaintiffs Trenton Hancock, Lilly Hancock, and Raedan Noe.

11. Plaintiff Trenton Hancock is the minor child of Plaintiff and also resides in and has been domiciled in the State of Ohio for at least six (6) months prior to filing this action.

12. Plaintiff Lilly Hancock is the minor child of Plaintiff and also resides in and has been domiciled in the State of Ohio for at least six (6) months prior to filing this action.

13. Plaintiff Cadrian Noe is the minor child of Plaintiff and resides in and has been domiciled in the State of Indiana for at least six (6) months prior to filing this action.

14. Plaintiff Raedan Noe is the minor child of Plaintiff and resides in and has been domiciled in the State of Ohio for at least six (6) months prior to filing this action.

15. Defendant General Motors is a foreign limited liability company and a citizen of the State of Delaware wherein it is incorporated and it is a citizen of the State of Michigan wherein it has its principal place of business in Detroit, Michigan; it does business in the State of Ohio as General Motors, LLC with a registered agent of Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

**IV. Facts**

16. Sometime between March 5, 2003 and May 15, 2004 General Motors manufactured and created a 2004 Generation I Cadillac CTS with a vehicle identification number of 1G6DM577X4016972.

17. General Motors installed in this vehicle an ignition switch manufactured by Delphi Packard Electrical, part number 12450257.

18. At some point after installing said ignition switch into said vehicle, General Motors became aware of a defect in the ignition switch following "some test driver reports that they turned the vehicles off with their knees while driving competitively."

19. As a result of learning this information, General Motors installed a different Delphi ignition switch – part number 1240257 - in its 2004 – 2006 Cadillac SRX model vehicles.

20. General Motors abandoned use of the Delphi ignition switches in its Generation II 2007-2008 Cadillac CTS model vehicles.

21. In January of 2010 General Motors issued a work order to change the key opening in its Cadillac CTS vehicles from a slot to a hole so as to "prevent accidental ignition shut off for customers with heavy key chains."

22. In October of 2011, a General Motors employee reported that, while driving a 2012 Cadillac CTS, contact between his knee and the key fob resulted in an unintentional switching off of the ignition.

23. Despite receiving this report of the on-going defect regarding its Cadillac CTS vehicles, General Motors "decided not to seek a change in design unless the company received additional complaints about the condition."

24. In April of 2012 a General Motors employee driving a 2012 Cadillac CTS experienced a stall while driving on two separate occasions.

25. This employee brought the vehicle to the General Motors Service and Parts Operations at the General Motors Center in Warren, Michigan, where he explained to General Motor's "Red X Team" that "the key inadvertently moved out of run when he hit the key with his knee."

26. The Red X Team recommended a change to the design of the keys for the Cadillac CTS vehicles, yet General Motors declined to implement this change.

27. The Red X Team member who drafted the report recommending the changes "noted on the document that she did not believe that the action taken in response to the [report] resolved the problem observed."

28. On April 3, 2014 General Motors launched an internal investigation into the defective ignition switches in its Cadillac CTS vehicles and related vehicles.

29. On April 11, 2014 Delphi informed the National Highway Safety Administration ("NHSTA") that General Motors had requested that it redesign the ignition switch in its 2004 – 2006 SRX vehicles "following some test driver reports that they turned the vehicles off with their knees while driving competitively."

30. In June of 2014 General Motors conducted tests of its pre-2008 Cadillac CTS vehicles at its Milford Proving Grounds in Milford, Michigan where it discovered that "when a slotted key on a key ring is carrying added weight the torque performance of the ignition system may be insufficient to resist energy generated when a vehicle goes off road or experiences some other jarring event, potentially resulting in the unintentional movement of the key away from the 'run' position."

31. General Motors also discovered from these tests that "the Cadillac CTS vehicles with keys with a hole and a single key ring between key and fob were potentially subject to inadvertent key rotation when the driver's knee came into contact with the vehicle's key."

32. General Motors finally decided to conduct a safety recall of its 2003-2014 Cadillac CTS vehicles on June 25, 2014.

33. On July 2, 2014 General Motors wrote a letter to NHSTA stating, "If the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, or if the driver unintentionally bumps the key ring or items attached to the key ring with their knee, the key may unintentionally move away from the 'run' position. If this occurs, engine power, power steering and power braking may be affected, increasing the risk of a crash. The timing of the key movement out of the 'run' position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes. Customers should remove all items from their key rings, including the key fob, leaving only the ignition key. In addition it is very important that drivers adjust their seat and steering column to allow clearance between their knee and the ignition key."

34. Megan bought the aforementioned 2004 Cadillac CTS with vehicle identification number of 1G6DM577X4016972 on March 4, 2015 and registered the title of her vehicle with the State of Ohio.

35. General Motors failed to provide notice to Megan of the defective ignition switch within Megan's 2004 Cadillac CTS.

36. On September 5, 2015 Megan was driving her 2004 Cadillac CTS westbound on State Road 122 in Preble County, Ohio when she lost control of her vehicle.

37. Consequently, Megan's vehicle veered off the roadway, violently striking an embankment and rolling over at least two times.

38. Megan was ejected from her vehicle.

39. The airbags in Megan's vehicle never deployed.

40. Megan was taken by ambulance to Reid Memorial Hospital in Richmond, Indiana and then to Miami Valley Hospital in Dayton, Ohio that same day.

41. Megan suffered serious bodily injuries, including fractures of her wrist and pelvis, multiple rib fractures, intracranial hemorrhaging, and permanent brain damage.

42. Megan suffers from permanent scaring along her right wrist as a result of the crash.

43. Megan suffers from permanent scaring along her right leg as a result of the crash.

44. Megan suffered traumatic brain injury with residual deficits in cognition that are significant and debilitating, including impairing in orientation, speech, motor behavior, though process, affect, memory, concentration, comprehension, and judgment.

45. Megan's brain injuries are not reversible.

46. Consequently, Megan is not capable of caring for herself as she requires and will forever continue to require round the clock care.

47. Consequently, Megan's four minor children – Trenton Hancock, Lilly Hancock, Raedon Hancock, and Cadrian Noe - have lost the support, care, and comfort of their mother.

48. Megan has incurred well over $75,000 in medical expenses from her injuries resulting from Defendant's negligence, in addition to loss income, future lost income, emotional distress, future emotional distress, pain and suffering, future pain and suffering, and the costs of her continued round the clock care for the rest of her life.

49. Megan's children, Trenton, Lilly, Cadrian, and Raedan, have lost the love, support, and comfort of their mother as a result of the Defendant's negligence.

50. Megan's mother, Plaintiff April Hollon, has incurred and will continue to incur substantial expenses and time spent in caring for and providing for Megan as a result of Defendant's negligence.

51. Megan's sister, Tia Maynard, has incurred and will continue to incur substantial expenses and time spent in caring for and providing for Megan's children as a result of Defendant's negligence.

**V.      Legal Claims**

52. Defendant General Motors negligently manufactured Megan's 2004 Cadillac CTS vehicle by installing a defective ignition switch that was the proximate cause of Megan's vehicle crashing and the proximate cause of her damages, including medical expenses, loss income, future lost income, emotional distress, future emotional distress, pain and suffering, future pain and suffering, and the costs of her continued round the clock care for the rest of her life, all of which exceeds $75,000.00.

53. Defendant General Motors failed to warn Megan of the defect within her 2004 Cadillac CTS vehicle, such failure to warn being the proximate cause of Megan's vehicle crashing and the proximate cause of her damages, including medical expenses, loss income, future lost income, emotional distress, future emotional distress, pain and suffering, future pain and suffering, and

the costs of her continued round the clock care for the rest of her life, all of which exceeds $75,000.00.

54. Defendant's aforementioned negligent manufacturing of Megan's 2004 Cadillac CTS vehicle was the proximate cause of Plaintiff Trenton Hancock's damages of the loss of his mother's support, care, and comfort.

55. Defendant's aforementioned failure to warn Megan of the defect in her vehicle was the proximate cause of Plaintiff Trenton Hancock's damages of the loss of his mother's support, care, and comfort.

56. Defendant's aforementioned negligent manufacturing of Megan's 2004 Cadillac CTS vehicle was the proximate cause of Plaintiff Lilly Hancock's damages of the loss of her mother's support, care, and comfort.

57. Defendant's aforementioned failure to warn Megan of the defect in her vehicle was the proximate cause of Plaintiff Lilly Hancock's damages of the loss of her mother's support, care, and comfort.

58. Defendant's aforementioned negligent manufacturing of Megan's 2004 Cadillac CTS vehicle was the proximate cause of Plaintiff Cadrian Noe's damages of the loss of his mother's support, care, and comfort.

59. Defendant's aforementioned failure to warn Megan of the defect in her vehicle was the proximate cause of Plaintiff Cadrian Noe's damages of the loss of his mother's support, care, and comfort.

60. Defendant's aforementioned negligent manufacturing of Megan's 2004 Cadillac CTS vehicle was the proximate cause of Plaintiff Raedan Noe's damages of the loss of his mother's support, care, and comfort.

61. Defendant's aforementioned failure to warn Megan of the defect in her vehicle was the proximate cause of Plaintiff Raedan Noe's damages of the loss of his mother's support, care, and comfort.

62. Defendant's aforementioned negligent manufacturing of Megan's 2004 Cadillac CTS vehicle was the proximate cause of Plaintiff April Hollon's damages including the substantial expenses and time spent in caring for and providing for Megan as a result of the injuries she sustained in this crash.

63. Defendant's aforementioned failure to warn Megan of the defect in her vehicle was the proximate cause of Plaintiff Raedan Noe's damages including the substantial expenses and time spent in caring for and providing for Megan as a result of the injuries she sustained in this crash.

64. Defendant's aforementioned negligent manufacturing of Megan's 2004 Cadillac CTS vehicle was the proximate cause of Plaintiff Tia Maynard's damages including the substantial expenses and time spent in caring for and providing for Megan's children as a result of the injuries Megan sustained in this crash.

65. Defendant's aforementioned failure to warn Megan of the defect in her vehicle was the proximate cause of Plaintiff Tia Maynard's damages including the substantial expenses and time spent in caring for and providing for Megan's children as a result of the injuries Megan sustained in this crash.

66. Plaintiffs plead *res ipsa loquitur*.

## VI. Request for Relief

67. Plaintiffs request an award of damages in an amount that will fully and justly compensate each and all of them for their injuries, an amount that significantly exceeds $75,000.00 in

damages due to serious and permanent bodily injuries, pain and suffering, emotional distress, lost wages, and lost earning potential.

68. An award of all other proper relief.

69. Plaintiffs demand a trial by jury.

                                  Respectfully submitted,

/s/    I. Marshall Pinkus

       PINKUS & PINKUS
       7002 Graham Road, Suite 100
       Indianapolis, IN 46220
       P: (317) 576-3743  F: (317) 576-3745
       impinkus@pinkusattorneys.com

/s/    Jane Beach

       101 N. Barron Street, Suite 102
       Eaton, Ohio 45320
       P: (937) 456-1400